Stephen L. Baker [SB1859]
Neil B. Friedman [NF0591]
Ryan A. McGonigle [RM8234]
BAKER and RANNELLS, PA
575 Route 28, Suite 102
Raritan, New Jersey 08869
Tel: (908) 722-5640

1350 Broadway – 10th Floor
New York, NY 10018

Attorneys for Defendants Brooks
Brothers, Inc. and Retail Brand Alliance, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RAYMOND E. STAUFFER,

        Plaintiff *Pro Se,*

        v.                             Case No. 08-CV-10369-SHS

BROOKS BROTHERS INC. and
RETAIL BRAND ALLIANCE, INC.,

        Defendants.
_____

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(1) and 12(b)(6)

1

## TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT.................................................................................5

II.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION ......................7

        A.      DEFENDANTS DID NOT AFFIX OR USE THE MARKINGS........................7

        B.      THE STATEMENT AT ISSUE IS NOT FALSE.............................................10

        C.      SECTION 292 DOES NOT APPLY TO EXPIRED PATENTS.......................11

        D.      PLAINTIFF'S COMPLAINT IS DEFICIENT PURSUANT TO RULE 9.......12

III.    THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION ....................13

        A.      PLAINTIFF LACKS STANDING ...................................................................14

                1.      PLAINTIFF HAS NOT PLED AN INJURY IN FACT ................................14
                2.      PLAINTIFF HAS NOT SHOWN CAUSATION..........................................17
        B.      SECTION 292 IS UNCONSTITUTIONALLY VAGUE..................................18

                1.      SECTION 292 DOES NOT LIMIT THE NUMBER OF PLAINTIFFS .......18
                2.      THE DAMAGES PROVISION IS UNCONSTITUTIONALLY VAGUE....20

IV.     DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES..........................................21

V.      CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

### Cases

*Accent Designs Inc. v. Jan Jewelry Designs, Inc.,*
827 F. Supp. 957 (S.D.N.Y. 1993).......................................................... 11, 12, 17, 23

*Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co.,*
786 F. 2d 1124 (Fed. Cir. 1986)............................................................................... 14

*Bender v. Williamsport Area School District,*
475 U.S. 534 (1986).................................................................................................. 15

*Bibow v. Am. Saw & Mfg. Co.,*
2007 WL 1667043, *1 (D. Mass. June 11, 2007)...................................................... 23

*Board of County Comm'rs v. Geringer,*
297 F.3d 1108 (10th Cir.2002) ................................................................................. 16

*Bonito Boats, Inc. v. Adkins,*
489 U.S. 141 (1989)................................................................................................... 13

*Chamilia LLC v. Pandora Jewelry LLC,*
85 USPQ2d 1169 (S.D.N.Y. 2007)............................................................................ 12

*City of Chicago* v. *Morales,*
527 U.S. 41 (1999)..................................................................................................... 20

*Clontech Labs., Inc. v. Invitrogen Corp.,*
406 F.3d 1347 (Fed. Cir. 2005)................................................................................. 19

*Femedeer v. Haun,*
227 F.3d 1244 (10 Cir. 2000).................................................................................... 21

*Filmon Process Corp. v. Spell-Right Corp.*
404 F.2d 1351 (D. C. Cir. 1968)......................................................................... 17, 21

*FMC Corp v. Control Solutions, Inc.,*
369 F. Supp. 2d 539 (E. D. Pa. 2005) ...................................................................... 14

*Hill* v. *Colorado,*
530 U.S. 703 (2000).................................................................................................. 20

*Interspiro USA v. Figgie Int'l Inc.,*
18 F.3d 927 (Fed. Cir. 1994)..................................................................................... 23

*ITC Ltd. v. Punchgini Inc.,*
74 USPQ2d 1239 (S.D.N.Y. 2005)............................................................................ 16

*LBB Corp. v. Lucas Distribution Inc.,*
88 USPQ2d 1057 (S.D.N.Y. 2008).............................................................................. 9

*Lear, Inc. v. Adkins* ,
395 U.S. 653(1969)................................................................................................... 13

*London v. Everett H. Dunbar Corp.,*
179 F. 506 (1st Cir. 1910)......................................................................................... 23

*Made in the USA Found.* v. *Phillips Foods, Inc.,*
365 F.3d 278 (4th Cir. 2004) .................................................................................... 16

*Mayview Corp.* v. *Rodstein,*
620 F.2d 1347 (9th Cir. 1980) .................................................................................. 15

*Rector v. City and County of Denver,*
348 F.3d 935 (10th Cir.2003) ................................................................................... 16

*Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.,*
786 F. Supp. 1287 (N.D. Ohio 1991)....................................................................... 23
*Southwestern Tel. & Tel. Co.* v. *Danaher,*
238 U.S. 482 (1915)................................................................................................ 20
*Stewart v. World Wrestling Federation Entertainment Inc.,*
74 USPQ2d 1024, 1030 (S.D.N.Y. 2004)................................................................ 15
*United States ex rel. Berge v. Bd. of Trustees,*
104 F.3d 1453 (4th Cir. 1997) ................................................................................ 17
*United States ex rel. Lujan v. Hughes Aircraft Co.,*
243 F.3d 1181 (9th Cir. 2001) ............................................................................... 22
*United States* v. *Lanier,*
520 U.S. 259 (1997)................................................................................................ 20
*United States v. Ursery,*
518 U.S. 267 (1996)................................................................................................ 21
*Vermont Agency of Natural Res. v. United States ex rel Stevens,*
529 U.S. 765 (2000)................................................................................................ 8
*Village of Hoffman Estates* v. *Flipside,*
455 U.S. 489 (1982)................................................................................................ 20

## Statutes

1231 U.S.C. § 3730........................................................................................................ 15

35 U.S.C. § 285............................................................................................................. 21

35 U.S.C. 292....................................................................................................... 6, 7, 11

## Rules

F. R. Civ. P. 12(b)(6) ..................................................................................................... 7

F. R. Civ. P. 9(b)...................................................................................................... 6, 12

Fed. R. Civ. P. 12(b)(1).............................................................................................. 6, 7

Fed.R.Civ.P. 17(a) ....................................................................................................... 20

## I.    SUMMARY OF THE ARGUMENT

Defendants, through their undersigned attorneys, move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).    Accompanying this memorandum of law are two (2) supporting declarations, namely: the declaration of Joseph Dixon, Senior Vice President of Production and Technical Services for Retail Brand Alliance, Inc. ("RBAI"), and the declaration of Neil B. Friedman, one of the attorneys for Defendants.    Although Defendant Brooks Brothers, Inc. merged into Defendant RBAI, and no longer exists, both Defendants, as named, are responding to the Complaint.

The Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a cause of action upon which relief may be granted because Defendants did not mark the items at issue, but purchased the previously marked component fabric piece from a third-party.

The Complaint also fails to state a cause of action because the marking itself is not false. The marking on Defendants' products consists of:

> THE ORIGINAL ADJUSTOLOX TIE
> REGD & PATD U.S. PAT. OFF.
> 279346 – 2083106 – 2123620

Defendants sell bow-tie products based on the original "Adjustolox Tie," originally patented in the 1930's under the referenced patents. The Adjustolox fabric component is obtained by Defendants from a third-party manufacturer that rightfully indicates that the Adjustolox device is based on original patent designs, and the expired patent numbers are listed for clarification. Any interested party could easily verify the expired nature of the

patents. Section 292 does not apply to expired patents under the definition of "unpatented" in the Statute and in case law.

The Complaint is further deficient first because it fails to comply with Rule 9(b), which requires a plaintiff to plead with particularity causes of action based on fraud or mistake. Fed. R. Civ. P. 9(b). Plaintiff pleads false marking without providing specific details as to Defendants' alleged conduct in making or advertising the markings. Further, Plaintiff has made no showing of intent to deceive the public, an essential element of the statute, especially whereas here Defendants never made the markings complained of nor marked them on the bow ties, and moreover, the verbiage appears on ties sold by other third party retailers.

The Court should also dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff does not have standing to bring this suit as he does not meet the case or controversy requirement of the U.S. Constitution Art. III.[1] The statute at issue in this case provides, "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. 292. While other types of *qui tam* plaintiffs have been deemed to be assignees of the government, which has injury in fact from wrongful monetary claims, *see Vermont Agency of Natural Res. v. United States ex rel Stevens,* 529 U.S. 765 (2000), under § 292, Plaintiff is not an assignee of the government. In fact, the only injury alleged by Plaintiff is a general claim of public harm.

---

[1] Plaintiff is an associate attorney with the New Jersey law firm of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein. Plaintiff resides in New Jersey, but is only licensed in New York. See Friedman Decl, Exh. D.

6

The Court should also dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) because the statute is vague on its face. Unlike the 'first to file' provision of the False Claims Act, § 292 contains no such provision. Clearly, Congress could not have intended that multiple plaintiffs could bring multiple suits against a single defendant for the same alleged false marking conduct. In addition, the Statute is vague because its damages provision is unclear, which is impermissible for a penal statute.

Finally, the Court should award Defendants attorney's fees. Plaintiff did not adequately investigate the underlying facts in this matter which would have obviated the filing of his Complaint. Defendants should be reimbursed the costs of responding.

## II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed unless it provides the grounds upon which a plaintiff's claim rests through factual allegations sufficient to raise a right to relief above the speculative level. *LBB Corp. v. Lucas Distribution Inc.*, 88 USPQ2d 1057 (S.D.N.Y. 2008) (stating that the standard is no longer that a complaint can be dismissed only if there is no set of facts that plaintiff could prove which would entitle him to relief) (*citing Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1975 (2007) and *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).     Here, Plaintiff's claims merely speculate that Defendants marked the ties at issue, when Defendants did not do so. Further, the markings are not false and Plaintiff has not complied with Rule 9(b).

### A.   DEFENDANTS DID NOT AFFIX OR USE THE MARKINGS

§ 35 U.S.C. 292(a) provides:

7

Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public; or Whoever marks upon, or affixes to, or uses in advertising in connection with any article the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public - Shall be fined not more than $500 for every such offense.

The Complaint alleges that Defendants engaged in "false marking" by marking and selling bow- ties with the following words:

THE ORIGINAL ADJUSTOLOX TIE
REGD & PATD U.S. PAT. OFF.
279346 – 2083106 – 2123620

(the "Patent Text").[2]  However, Defendants did not mark the ties, cause them to be so marked, or use the patent numbers in advertising at any time or in any manner.

Defendants sell hand-crafted bow-ties at their stores, parts of which they acquire from a third-party manufacturer. *See* Declaration of Lou Dixon in Support of Motion to Dismiss ("Dixon Decl.") at ¶4 and Exhibit A attached thereto.  Specifically, Defendants

---

[2] See Plaintiff's Complaint, ¶18.

purchase the Adjustolox fabric lock component bearing the Patent Text from a third-party and incorporate the same on a hand crafted Brooks Brothers bow tie to provide the consumer with a bow tie with an adjustable neck size. *Id.*

At no time, did Defendants mark or affix the Patent Text upon their bow ties. *See* Dixon Decl. at ¶¶ 8 and 10. Defendants were first made aware that expired patent numbers were listed on the fabric lock component that Defendants purchase upon being served with Plaintiff's complaint. *See* Dixon Decl. at ¶ 5. At no time have Defendants used the expired patent numbers or the Patent Text in any of their advertising. *See* Dixon Decl. at ¶ 9.

Further, other retail merchants and major department stores sell Adjustolox ties, which are comprised in part of identical components with the identical markings at issue. Such department stores include, but are not limited to, Bloomingdales, Saks Fifth Avenue, and Lord & Taylor. *See* Declaration of Neil B. Friedman in Support of Motion to Dismiss ("Friedman Decl.") at ¶¶ 7- 9, and Exhibits A, B, and C attached thereto, showing purchases of Adjustolox ties made from these stores bearing the identical components with the identical markings at issue.

Because § 292 is a quasi-criminal statute, it must be strictly construed as applied to alleged misconduct. *See Accent Designs Inc. v. Jan Jewelry Designs, Inc.,* 827 F. Supp. 957 (S.D.N.Y. 1993). The Statute penalizes those who commit the affixation of false markings or cause the markings to be done or advertise false markings. As such, Defendants did not violate the Statute as the "whoever" term does not apply to Defendants actions.

9

Further, it is impossible that Plaintiff could prove any facts showing that Defendants intended to deceive the public. Defendants purchase and incorporate the previously marked fabric lock component into their ties as do other retail merchants and/or their suppliers. *See* Declaration of Neil B. Friedman in Support of Motion to Dismiss ("Friedman Decl.") at ¶¶ 7- 9, and Exhibits A, B, and C attached thereto, showing purchases of Adjustolox ties made from these stores bearing the identical markings at issue. At most, Defendants made the same mistake as did these other retailers in purchasing the fabric lock component bearing the patent text and accepting the markings on same as true. "Because § 292 is, unlike the Lanham Act, a penal statute, it must be strictly construed, and, as such, an intent to deceive will not be inferred from statements that may have been the result of inadvertence or mistake." *Chamilia LLC v. Pandora Jewelry LLC,* 85 USPQ2d 1169, 1178 (S.D.N.Y. 2007).

## B.   THE STATEMENT AT ISSUE IS NOT FALSE

"In order to trigger the fining mechanism of this statute in the present context the Plaintiffs must establish . . . that [the marking] falls within the meaning of the Statute." *Accent Designs Inc. v. Jan Jewelry Designs, Inc.,* 827 F. Supp. 957 (S.D.N.Y. 1993). Here, Defendants sell vintage bow-ties that utilize the lock mechanism originally patented in the 1930's which Defendants purchase pre-marked from a third-party manufacturer. The tie and its locking mechanism were originally patented and marketed to the public in the 1930's as "ADJUSTOLOX TIES." The source of the component added the complained of markings, presumably to indicate that the ties are *based on* the original patented designs. The use of the words "THE ORIGINAL" clearly indicates that the ties are manufactured from vintage styles and designs, as an homage to past styles.

10

This is nothing new for Brooks Brothers. It repeatedly looks back to its history, starting from the year 1818, for vintage designs. For example, Brooks Brothers sells and advertises a line of men's shirts known as the 'Original Button-Down Polo.' The public, without doubt, understands the meaning imparted by the words used.

Congress enacted the false marking statute in part because a properly marked patented article provides the public with "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Adkins*, 489 U.S. 141, 162 (1989). Here, a third-party manufacturer made the markings on the fabric lock component to inform consumers that the Adjustolox neck lock fabric is based on expired patents. The marking also informs its competitors that the manufacturer makes no intellectual property claim to them. This is consistent with federal patent policy, which recognizes an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969).

## C.    SECTION 292 DOES NOT APPLY TO EXPIRED PATENTS

Plaintiff claims that Defendants falsely marked their bow-ties because it sells ties that contain expired patent numbers. The elements of a false marking claim under § 292 include that the article at issue is "unpatented." *See* 35 U.S.C. 292(a). Strictly construing § 292 the word "unpatented," means never patented, rather than previously patented. Congress provided its own interpretation in § 292 by listing the following examples: "patent applied for," "patent pending," or "any word importing that an application for patent has been made, when *no application for patent has been made*, or if made, is not pending."

11

The Statute does not apply to the markings at issue. The original Adjustolox inventor did in fact apply for patents and was granted the same. The third-party manufacturer indicated that the neck lock device was based on these patents by using the word "Original." In *Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co.*, 786 F. 2d 1124, 1125 (Fed. Cir. 1986) the Federal Circuit affirmed the district court's holding that labels on firearm boxes showing expired patent numbers was not deceptive nor violative of § 292 as a matter of law. *Id.* In *FMC Corp v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 584 (E. D. Pa. 2005), the district court adopted this reasoning about expired patents stating that expired patents "inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection."

Marking articles with expired patent numbers is both beneficial and good public policy. Rather than stifling competition, it allows other would-be manufacturers to quickly determine that the article has entered into the public domain and that they are free to make it. The patent number also provides them a means to acquire the manufacturing blueprint of the article because the patent itself show them the best mode of making the article.

## D.   PLAINTIFF'S COMPLAINT IS DEFICIENT PURSUANT TO RULE 9.

Plaintiff has not met the heightened pleading standard for claims of fraud. Fed. R. Civ. P. 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

12

Plaintiff is subject to Rule 9(b) for claims made under § 292. *See Mayview Corp.* v. *Rodstein,* 620 F.2d 1347, 1359 (9th Cir. 1980) (holding that the state-of-mind finding with respect to false marking should be consonant with the fraud findings). "To state a cognizable cause of action for fraud, plaintiff must allege: (i) a misrepresentation or omission of a material fact; (ii) which was false and known to be false by defendant; (iii) made for the purpose of inducing plaintiff to rely on it; (iv) justifiable and reasonable reliance on the material misrepresentation or omission; and (v) resulting injury." *Stewart* v. *World Wrestling Federation Entertainment Inc.,* 74 USPQ2d 1024, 1030 (S.D.N.Y. 2004) (*citations omitted*). In his Complaint, Plaintiff mistakenly alleges that Defendants made a misrepresentation of a material fact. Plaintiff utterly fails to allege facts to show that Defendants in fact made the markings complained of, or that Defendants had knowledge of false markings, or that Defendants intended to induce anyone to rely on the Patent Text. Further, Plaintiff also utterly fails to show reliance on the patent text or any resulting injury to anyone. As more fully developed below, other retailers in fact sell bow-ties with the Adjustolox design ties bearing identical markings. See Friedman Decl. at ¶¶ 7-9 and Exhibits A, B and C attached thereto.

## III. THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION

Federal Court subject matter jurisdiction is determined by Article III of the United States Constitution and the statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986).

13

## A.   PLAINTIFF LACKS STANDING

A plaintiff must have standing to sue in Federal Court, a threshold jurisdictional issue.   *See Rector v. City and County of Denver*, 348 F.3d 935, 942 (10th Cir.2003). Standing has both constitutional and prudential components. *See id.* For a party to have standing, there must be: (1) an injury to the party's legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *See id.* A party has prudential standing if: (1) the party asserts its own rights, not those of third parties; (2) the party's claim is not a general grievance shared equally and generally by all or a large class of citizens; and (3) the party's injury is within the zone of interests the statute or common law claim intends to protect. *See Board of County Comm'rs v. Geringer,* 297 F.3d 1108, 1112 (10th Cir.2002).

## 1.   PLAINTIFF HAS NOT PLED AN INJURY IN FACT

Section 292 states that "[a]ny person may sue for the penalty."   Courts have held that "any person" under the false advertising provision of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), does not confer standing on a consumer, but applies to competitors whose commercial interests have been injured. *See, e.g., Made in the USA Found.* v. *Phillips Foods, Inc.,* 365 F.3d 278 (4th Cir. 2004) (holding "that a consumer does not have standing under the Lanham Act to sue for false advertising"). *ITC Ltd. v. Punchgini Inc.*, 74 USPQ2d 1239, 1252 (S.D.N.Y. 2005) (stating that while plaintiff must demonstrate an interest to be protected, the Circuit construes standing liberally given the

14

statute's additional purpose of consumer protection but requires a more substantial showing of injury where the plaintiff is not in direct competition).

The "any person" language of § 292 was likewise meant to apply to competitors whose commercial interests have been injured. *See Filmon Process Corp. v. Spell-Right Corp.* 404 F.2d 1351, 1355 (D. C. Cir. 1968) (stating that the provision is designed to protect the exclusiveness of the use of the invention granted by the patentee to protect his patent position, and as the only likely enforcer of it). "It is well settled that Section 292 was intended to protect a patentee against the fraudulent use of his name or device and to prevent, for the purpose of deceiving the public, the use in advertising in connection with any article, words imparting that an application for patent had been made when no application had been made or if made, is not pending." *Accent Designs Inc. v. Jan Jewelry Designs, Inc.,* 827 F. Supp. 957 (S.D.N.Y. 1993).

Plaintiff argues that because § 292 has been characterized as a *qui tam* statute, he has standing as a relator, similar to the standing of a relator under the False Claims Act ("FCA"). 1231 U.S.C. § 3730. The False Claims Act provides a reward for a whistle-blower who is aware of a company or an individual that has financially defrauded the United States government. However, a relator in a *qui tam* suit satisfies Article III standing requirement as an assignee of the government's claims, which stem from false monetary claims made to the government. The only injury claimed by Plaintiff is "public harm." Plaintiff has not alleged harm to the U.S. Government. Plaintiff cannot circumvent Article III standing by characterizing the action as "qui tam." *United States ex rel. Berge v. Bd. of Trustees,* 104 F.3d 1453, 1458 (4th Cir. 1997). (stating that the

15

government, as the real party in interest under the FCA, must still have suffered an injury in fact.). The government is not the real party in interest under § 292.

In *Vermont Agency,* the Supreme Court held that every plaintiff, including a *qui tam* plaintiff, must meet the constitutional minimum of standing under Article III of the Constitution. *Id.* The Court noted that an FCA *qui tam* plaintiff: (1) must demonstrate an injury in fact, (2) must establish causation, a traceable connection between the alleged injury in fact and the alleged conduct of the defendant,   and (3) must demonstrate redressability, a substantial likelihood that the requested relief will remedy the alleged injury in fact. *Id.* at 771 (internal citations and quotation marks omitted). The Court addressed standing of a private individual who brings a suit in federal court on behalf of the United States under the FCA. *Id.* at 768.  The court emphasized the strict procedural requirements of the FCA, namely: *(i)* the complaint must be filed under seal and served, together with written disclosure of substantially all material evidence and information the plaintiff possesses, upon the United States; *(ii)* the U.S. gets at least 60 days with extensions of time to determine whether it wishes to intervene; and *(iii)* the U.S. then has a right of refusal under which it may take over the case or decline to do so, after which if it intervenes it may limit the role of the original plaintiff. *Id* at 769-770. The court held that an FCA plaintiff has standing because the FCA "effect(ed) a partial assignment of the Government's damages claim." *Id.* at 773-774.

The Court's holding in *Vermont Agency* case does not apply to cases brought under § 292 because § 292 does not effect a partial assignment to Plaintiff of any harm allegedly suffered by the United States.  Section 292 does not seek to redress or deter purposeful acts of financial fraud on the United States Treasury.  The FCA contains

16

provisions consistent with an assignee-assignor relationship between a *qui tam* plaintiff and the United States, because the United States has been directly financially defrauded. For this reason, the FCA explicitly allows an individual to bring suit for the United States and in the name of the United States Government.

Section 292 contains no similar provisions, and claims brought under it are not brought on behalf of the United States. As such, Plaintiff here is not an assignee of the United States. Section 292(b) which grants plaintiffs one-half of any award does not effectuate standing. Further, because § 292 is a penal statute that must be strictly construed, s*ee Accent Designs Inc. v. Jan Jewelry Designs, Inc.,* 827 F. Supp. 957 (S.D.N.Y. 1993), standing as an assignee cannot be found absent appropriate statutory language. Section 292 contains no such language.

## 2.   PLAINTIFF HAS NOT SHOWN CAUSATION

In his Complaint, Plaintiff fails to allege facts of causation between Defendants' alleged conduct and any resulting injury. Plaintiff claims that the alleged false marking contributes to the public harm, but provides no evidence of public harm. In fact, not only have Defendants performed no acts in violation of the Statute, but no actual harm has occurred.

The Federal Circuit has refused to impose strict liability for false marking. *Clontech Labs., Inc. v. Invitrogen Corp.,* 406 F.3d 1347 (Fed. Cir. 2005). Instead, "in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (*i.e.,* covered by a patent)." *Id.* at 1352, 1353. Just as § 292 cannot impose liability without proof of intent to deceive the public, there is no

17

liability without proof of causation. Plaintiff has alleged no facts to support a finding of causation that anyone in the public was deceived.

## B. SECTION 292 IS UNCONSTITUTIONALLY VAGUE

The Supreme Court has repeatedly held that vagueness in a criminal or quasi-criminal statute violates due process if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago* v. *Morales*, 527 U.S. 41, 56 (1999) *accord, e.g., Hill* v. *Colorado,* 530 U.S. 703, 732 (2000). Punishment may not be predicated on a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States* v. *Lanier*, 520 U.S. 259, 266 (1997).

The vagueness doctrine applies to both criminal and civil statutes that impose punitive rather than compensatory awards. *See,e.g., Village of Hoffman Estates* v. *Flipside*, 455 U.S. 489, 499 (1982) (employing strict vagueness scrutiny for statute that imposed quasi-criminal penalties). A penalty cannot be so "plainly arbitrary and oppressive as to be nothing short of a taking of its property without due process of law." *Southwestern Tel. & Tel. Co.* v. *Danaher,* 238 U.S. 482 (1915) ($6,300 civil penalty violated due process). Section 292 is unconstitutional as applied to Defendants as Defendants could not possibly have had notice that purchasing pre-marked ties violated a law.

## 1. SECTION 292 DOES NOT LIMIT THE NUMBER OF PLAINTIFFS

18

Section 292 is constitutionally vague because it contains no provision that bars duplicative suits based on the same facts brought by multiple plaintiffs. As such, Defendants' due process rights could be violated if another *qui tam* relator files suit against them based on the same alleged false markings. "The double jeopardy clause does not apply where the nub of the action is civil *qui tam* enforcement of essentially remedial provisions." *Filmon Process Corp. v. Spell-Right Corp.* 404 F.2d 1351, 1355 (D. C. Cir. 1968) (holding that § 292 does not bar an appeal challenging the correctness of a judgment against a private party bringing a qui tam action)

Without a first to file provision, § 292 presents a double jeopardy problem. The Double Jeopardy Clause in the Fifth Amendment to the U. S, Constitution prohibits anyone from being prosecuted twice for substantially the same crime. *See, e.g. United States v. Ursery,* 518 U.S. 267 (1996). Issues of res judicata and collateral estoppel could be severally hampered if one party were allowed to proceed in one lawsuit, but then another party turns-around and challenges the same defendant again in another case. *See Femedeer v. Haun*, 227 F.3d 1244 (10 Cir. 2000). Because there is no language in § 292 that explicitly forbids multiple suits against a single plaintiff based on the same alleged false marking acts, § 292 is unconstitutionally vague and violates due process.

## a. COMPARISON TO FCA FIRST TO FILE PROVISION

The False Claims Act provides a reward for a whistle-blower who is aware of a company or an individual that has financially defrauded the United States government. It provides the following 'first-to-file' provision: "When a person brings an action under this subsection no person other than the Government may intervene or bring a related

19

action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This
provision bars any qui tam case that is based on the "facts underlying" a pre-existing
action, as a jurisdictional limit on the courts' power to hear certain duplicative qui tam
suits. *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1183 (9th Cir.
2001). The courts have interpreted this wording broadly, so that qui tam relators with
knowledge of the same fraud essentially are in a "race to the courthouse." *Id.*

### b. SECTION 292 CONFLICTS WITH FED. R. CIV. P. 17(a)

The Federal Rules of Civil Procedure and Rule 17(a) specifically states that
"[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ.
P. 17(a). Section 292 does not require nor has Plaintiff filed his Complaint in the name of
the United States or any competitor of Defendants who may have suffered injury in fact.
Plaintiff is a *pro se* litigant who alleges that he filed suit to the benefit of the government,
not on its behalf. As such, Plaintiff's Complaint is deficient and should be dismissed.

### 2.    THE DAMAGES PROVISION IS UNCONSTITUTIONALLY VAGUE

§ 292(a) provides in relevant part:

> Whoever, without the consent of the patentee, marks upon,
> or affixes to, or uses in advertising in connection with
> anything made, used, offered for sale, or sold by such
> person within the United States, or imported by the person
> into the United States, the name or any imitation of the
> name of the patentee, the patent number, or the words
> "patent," "patentee," or the like, with the intent of
> counterfeiting or imitating the mark of the patentee, or of
> deceiving the public . . . ***Shall be fined not more than
> $500 for every such offense.*** (emphasis added).

20

Because § 292 is a quasi-criminal statute which must be strictly construed, the fine must also be strictly construed. *See Accent Designs Inc. v. Jan Jewelry Designs, Inc.,* 827 F. Supp. 957 (S.D.N.Y. 1993).

In *London v. Everett H. Dunbar Corp.,* 179 F. 506 (1st Cir. 1910), the Court stated, "It follows that a plaintiff, in order to recover more than a single penalty, must go further than to prove the marking of a number of unpatented articles. The proof must be sufficiently specific as to time and circumstances to show a number of distinct offenses, and to negative the possibility that the marking of the different articles was in the course of a single and continuous act." *Id.* at 507-09. *See also Bibow v. Am. Saw & Mfg. Co.,* 2007 WL 1667043, *1 (D. Mass. June 11, 2007) (stating that it was "doubtful that the statute ever intended to create such a lucrative game of 'gotcha'" when assessing damages based on per unit evaluation); *Sadler-Cisar, Inc. v. Commercial Sales Network, Inc.,* 786 F. Supp. 1287, 1296 (N.D. Ohio 1991) (holding that the specific false marking at issue was a continuous violation that constituted only a single offense).

## IV.    DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES

The court in exceptional cases may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285.   A case is exceptional where the totality of the circumstances show that the losing party acted in bad faith or at least with gross negligence in bringing or maintaining the suit. *Interspiro USA v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994).

Here, Plaintiff's conduct in filing his Complaint without serious investigation amounts to gross negligence.   Plaintiff brought an unfounded lawsuit against Defendants without doing any due diligence and without even contacting Defendants prior to filing

the Complaint. Rather, he filed a baseless Complaint based on his single purchase of two ties from one of Defendants' stores. Indeed, Plaintiff's Complaint is deficient in its failure to show even any advertising used by Defendants incorporating or referencing the Patent Text or expired patent numbers pursuant to Section 292.

Plaintiff has accused Defendants of a quasi-criminal act, a highly reputable business establishment, doing business in the United States since 1818. Defendants have expended significant and substantial time, effort and money in building, maintaining and fostering the goodwill that its businesses represent. Plaintiff prematurely filed his Complaint, putting Defendants' business reputation at stake, and costing Defendants, at a minimum, the expense of responding to this Complaint.

Plaintiff is an associate at an Intellectual Property law firm located in Roseland, New Jersey. *See* Friedman Decl. ¶10 and Exhibit D. Attorneys for Defendants bought ties with identical markings at three major department stores, namely Bloomingdales, Saks Fifth Avenue, and Lord & Taylor. See Friedman Decl. at ¶¶ 7-9 and Exhibits A, B and C attached thereto. If Plaintiff had done a simple investigation at these same stores, or at department stores at the Short Hills Mall which is located no more than 15 minutes away from his personal residence, he would have quickly uncovered the fact that Defendants are not the sole seller of the products bearing the Adjustolox component with the identical patent numbers. *See* Friedman Decl. ¶¶ 11-12, and Exhibits E and F showing distance from his residence to the Short Hills Mall and listing of stores at the mall. Further, if Plaintiff had called Defendants to inform them of his purchases, Defendants could have given Plaintiff clarifying information and obviated the Complaint.

22

Plaintiff, a practicing attorney, alleges quasi-criminal conduct without a factual foundation, which could harm the business reputation of Defendants.   This conduct bespeaks of exceptional circumstances and gross professional negligence, for which Defendants are entitled to recover attorney's fees.

## V.   CONCLUSION

For the aforementioned reasons, Defendants respectfully requests that the Court dismiss Plaintiff's claims for false marking and judgment as a matter of law in favor of Defendants, and for such other and further relief as the Court deems just and proper.

Respectfully submitted

Dated:   January   15, 2009

/Stephen L. Baker/
Stephen L. Baker [SB1859]
Neil B. Friedman [NF0591]
Ryan A. McGonigle [RM8234]
Attorneys for Brooks Brothers, Inc. and
Retail Brand Alliance, Inc.
BAKER & RANNELLS, PA
575 Route 28, Suite 102
Raritan, New Jersey 08869
Telephone: 908-722-5640
Fax:   908-725-7088

23