Stephen L. Baker [SB1859]
Neil B. Friedman [NF0591]
Ryan A. McGonigle [RM8234]
BAKER and RANNELLS, PA
575 Route 28, Suite 102
Raritan, New Jersey 08869
Tel: (908) 722-5640

510 Lexington Avenue – 10th Floor
New York, NY 10022

Attorneys for Defendants Brooks
Brothers, Inc. and Retail Brand Alliance, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYMOND E. STAUFFER,

       Plaintiff *Pro Se*,

  v.                                                                Case No. 08-CV-10369-SHS

BROOKS BROTHERS INC. and
RETAIL BRAND ALLIANCE, INC.,

       Defendants.

---

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(1) and 12(b)(6)

Defendants, Retail Brand Alliance, Inc. and Brooks Brothers, Inc.[1] (collectively, "RBAI" or "Defendants") submit this Reply Memorandum in Further Support of Defendants' Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6).

---

[1] As noted in Defendants' initial brief, Brooks Brothers, Inc. merged into RBAI and no longer exists. However, both Defendants as named are moving the Court herein for dismissal of the same.

1

## LEGAL ARGUMENT

I. **Plaintiff Cannot Prove that Defendants "Intended to Deceive the Public"**

Plaintiff's impermissibly-oversized opposition brief assumes too much.[2] To begin with, Plaintiff assumes: (i) reference to an "expired" patent on RBAI's bowties is a "false marking" within the meaning of 35 U.S.C. §292(a); (ii) because RBAI assembled the bowties with the patent markings obtained and manufactured from/by a third party, it "affixed" the "false marking" within the meaning of the statute; and (iii) as such, it had to have intended to deceive the public. To prevail on his argument, Plaintiff, a patent attorney admitted to this Court, must prove that Defendants falsely affixed the patent-in-suit to the bowties with the intent to deceive the public. *See Clontech Labs. v. Invitrogen Corp.*, 263 F. Supp. 2d 780, 791 (D. Del. 2003). Plaintiff's claims must fail as a matter of law, however, because: (1) Defendants were not responsible for the affixing of the reference to the expired patents to the adjustable fabric lock component manufactured and sold to Defendants by a third-party, J.M.C. Bow Company, Inc. (hereinafter, "J.M.C."); (2) the responsibility of affixing such references to the adjustable fabric lock component was not Defendants', but rather J.M.C.'s; and (3) given such facts, Plaintiff cannot possibly prove that Defendants had "intended to deceive the public."

A finding of intent to deceive the public is an absolute prerequisite for a finding of liability under 35 U.S.C. §292. *See Project Strategies Corp. v. Nat'l Comm. Corp.*, 948 F.Supp. 218, 227 (E.D.N.Y. 1996)(citing *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 700 (S.D.N.Y. 1963)); *Airwick Industries, Inc. v. Sterling Drug Inc.*, 720 F.Supp. 409, 415 (D.N.J.

---

[2] Defendants respectfully requests that the Court disregard pages 26 through 37 of Plaintiff's Opposition Brief because Plaintiff failed to request permission to exceed the Court's standard practice that "memoranda of law in support of and in opposition to motions are limited to 25 pages." Moreover, Plaintiff's *Pro Se* status cannot shield him from a negative finding on this issue because Plaintiff is, in fact, an attorney admitted to practice before this Court and is required to know the Local Rules and the Individual Practices of the Judges before whom he is admitted to practice.

2

1989); *Water Gremlin Co. v. Ideal Fishing Float Co.*, 401 F.Supp. 809, 813 (D. Minn. 1975); *see also, Arcadia Machine & Tool, Inc. v. Strum, Ruger & Co.*, 786 F.2d 1124, 1125 (Fed. Cir. 1986)(finding there is no violation of §292 absent evidence that the false marking alleged was made for the purpose of deceiving the public).

On the issue of intent, Plaintiff properly points out that he has the burden of proof, *see* Opposition Brief at 6, but glosses over the fact that "the evaluation of the [Plaintiff's] proofs on these elements is necessarily constrained by the fact that, because the statute is penal in nature, it must be strictly construed." *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 827 F.Supp. 957, 968 (S.D.N.Y. 1993)(Sweet, J.)(citing *Brose v. Sears, Roebuck & Co.*, 455 F.2d 763, 765 (5th Cir. 1972); and *Solomon v. Greco*, 1990 U.S. Dist. LEXIS 13344 at *10-17 (E.D.N.Y. Oct. 2, 1990); *D.O.C.C., Inc. v. Spintech Inc.*, 1994 U.S. Dist. LEXIS 21528 at *44 (S.D.N.Y. 1994)(Patterson, Jr., J.); *see also*, 1 JOHN GLADSTONE MILLS III ET AL., PATENT LAW FUNDAMENTALS §2:26 (2d ed. 2009)("…the scienter requirement [under 35 U.S.C. §292] has been said to be a heavy one and is narrowly construed.").

In construing Section 292, the Federal Circuit held that intent to deceive is "a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech Labs. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). The intent requirement is subjective in nature but courts measure it by objective criteria. *Id.*; *see also, Meyer v. Rodex Sales & Services, LLC*, 2006 U.S. Dist. LEXIS 84451 at *19 (D.Id. 2006). Using objective criteria, therefore, "the fact of misrepresentation coupled with **the proof** that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Clontech*, 406 F.3d at 1352 (emphasis added). Even assuming that

3

reference to an "expired" patent is a "false marking"—a premise of law that there is *little* authority for[3]—Plaintiff still has to prove that Defendants intended to deceive the public. **Plaintiff's proofs on this subject are scant and based on conjecture.** In particular, Plaintiff argues:

> "[T]he *probability* that a sophisticated, globally-operating company like Brooks Brothers, whose life's [*sic*] blood depends upon the global enforcement of its IP-product marking practices (Complaint ¶¶52-87) and upon its licensing of *patented* technologies (Complaint ¶¶88-109), would have 120 tie-makers *inadvertently* sewing a *false* patent marking *label* right next to Brooks Brothers *own* trademark *label* is *highly unlikely*."

*See* Plaintiff *Pro Se's* Memorandum of Law in Opposition to Defendants' Motion to Dismiss under Rules 12(b)(1) and 12(b)(6)(hereinafter, "Plaintiff's Oppo. Brief")(Doc. 27) at 6-7 (emphases in original).

### a. If Plaintiff Calls Himself a "Victim," So Too Are Defendants and the Other Bowtie Manufacturers that Obtained the Pre-Made and Pre-Marked Fabric Lock Components from J.M.C.

Somewhere later in his 38-page brief, Plaintiff also argues that he is the victim of the inclusion of the expired patent numbers in Defendants' bowtie products.[4] Defendants, however—much like Bloomingdales, Saks Fifth Avenue and Lord & Taylor—who also incorporated the fabric lock component from J.M.C. into their own respective bowties—is also a victim. Quite simply, Defendants—when they received the *pre-made* and *pre-marked* fabric lock components from J.M.C. and had, in turn, sewed such components into its bow-ties—had trusted that the legends written thereon were true. The much-maligned "Friedman Holiday

---

[3] *See, e.g.,* CHISUM ON PATENTS ("CHISUM"), §20.03[7][c][vii] (2008)("There is little authority on whether continued use of a patent number of an article after expiration of the patent constitutes culpable mismarking."). This issue will be discussed herein at Section II.

[4] "The increases in the production costs of the competitors' finished product as a result of such unnecessary design around decisions have of course been borne directly by the bow-tie wearing consumer—the sharp-dressed Plaintiff *Pro Se*, who has purchased bow ties from those inappropriately hoodwinked Brooks Brothers competitors, just as he has from Brooks Brothers[.]" *See* Plaintiff's Opp. Brief at 22.

4

Shopping spree"—to call upon own Plaintiff's words—showed that Defendants' competitors had similarly trusted in J.M.C.

Where a defendant in a false marking situation has nothing to do with the actual *affixing*—as here—there can be no intent to deceive the public and, in turn, no liability under 35 U.S.C. §292. *See Water Gremlin*, 401 F.Supp. at 813; *see also, Nat'l Athletic Supply Corp. v. Muscle-Matic, Inc.*, 1968 U.S. Dist. LEXIS 9719 at *7, 20-21 (M.D. Fla. 1968). In *Water Gremlin*, a case analogous to the instant matter, the defendant manufactured and sold fishing line sinkers. *Id*. at 810. In that case, the plaintiff complained about the words "Pat. and Pats. Pend." on plastic pouches containing the defendant's sinkers because none of the sinkers had been patented and patent applications for the same had never been filed. *Id*. at 813. The defendant in *Water Gremlin*, however, obtained its plastic pouches from a third party and the "Pat. and Pats. Pend." legend was printed on the plastic pouches by and at the behest of the pouch manufacturer. *Id*. In holding in favor of defendant, the *Water Gremlin* court "[t]he evidence indicates that Ideal had nothing to do with affixing the designation …[on the plastic pouches] and, in fact, defendant objected to the placement of these words on its plastic pouches." *Id*.

In *Nat'l Athletic*, another analogous case, the defendant was accused of infringing plaintiff's patent and defended the suit, *inter alia,* on the grounds that the plaintiff had mismarked and misused its patent in violation of 35 U.S.C. §292. *See* 1968 U.S. Dist. LEXIS 9719 at *3. In particular, the defendant in *Nat'l Athletic* alleged that plaintiff's failure to remove reference to an expired patent and the words "patent pending" on boxes that the plaintiff's bowling gloves were sold in was a "false marking" under Section 292. *Id.* at *5-8.

In that case, the plaintiff sold a bowling glove that was manufactured from 1959 to 1965 by a non-party to the lawsuit by the name of the Lindfelt Glove Manufacturing Co., Inc.

5

("Lindfelt"). *Id.* at *5. The glove itself was comprised of two components for which both the plaintiff and Lindfelt, at varying times, had owned separate patents. *See id.* Lindfelt held the patent to an elastic backing that was stitched onto the bowling glove. *See id.* For some of the relevant period, Lindfelt's patent was registered whereas the plaintiff had a patent application pending in the U.S. Patent and Trademark Office. *Id.* From 1959 to 1965, Lindfelt purchased glove boxes in which the plaintiff's bowling gloves would be sold. *Id.* Beginning in 1962, when the plaintiff's patent issued, Lindfelt had requested and been granted permission to place reference to its patent on the box. *Id.* The *Nat'l Athletic* Court noted that "National understood that Lindfelt's *patent No. 2,447,951* pertained to the elastic backing which was used on the bowling glove." *Id.* (emphasis in original).

In mid-1965, the plaintiff in *Nat'l Athletic* began to manufacture its gloves on its own but still bought the elastic glove backing from Lindfelt. *Id.* at *6. Sometime thereafter, the plaintiff began to order boxes from yet another third-party but because it was still purchasing the elastic glove backing Lindfelt, it instructed the new box manufacturer to include reference to Lindfelt's patent on the box. *Id.* In 1965, however, Lindfelt's patent had expired and Lindfelt had never advised the plaintiff as such. *Id.* Nevertheless, in 1966 or 1967, the plaintiff had decided to discontinue use of Lindfelt's elastic backing on its bowling glove and advised the new box manufacturer to remove reference to Lindfelt's then-expired patent. *Id.* The new box manufacturer, in producing a new order of boxes for the plaintiff, failed to remove reference to the Lindfelt expired patent and the term "U.S. Patent Pending" from the box. *Id.* When the new boxes were delivered to the plaintiff, it registered a complaint with the box manufacturer "but decided to use the boxes rather than to destroy the six-thousand dollar order of boxes because of this mistake." *Id.* at *7.

6

In finding for plaintiff, the *National Athletic* Court held that the use of the Lindfelt patent and "patent pending" on its box "were done through a series of mistakes primarily by Lindfelt and [the third party box manufacturer], and the use of these markings was not predicated on an intent by [plaintiff] to deceive the public in any way." *Id.* Specifically, the Court held:

> "Since the evidence does not show that the plaintiff used either the term 'United States Patent Pending' or the *patent No. 2,447,951* in conjunction with the sale of its bowling glove for the purpose of deceiving the public, **and since the use of these terms was primarily the responsibility of [Lindfelt] and [the third-party box manufacturer], and since plaintiff took steps to have these terms removed from its box when it believed them to be inappropriate, plaintiff is not guilty of false marking under 35 U.S.C. §292[.]**"

*Id.* at *20-21 (emphases added).

Similarly, Defendants did not affix the reference to the expired patents on the fabric lock component manufactured by and obtained from J.M.C. More importantly, the use of such patent terms were solely the responsibility of J.M.C. Here, Defendants, like the parties in *Nat'l Athletic* and *Water Gremlin*, reposed in the confidence that the materials provided by unrelated third-parties were accurate. As such, Defendants cannot be said to have included the fabric lock component supplied by J.M.C. for the purposes of "deceiving the public." At that point, like the plaintiff in *Nat'l Athletic*, Defendants also took quick measures to ensure that these terms would not ever be used again in connection with their bowties. *See*, Second Declaration of Joseph Dixon ("Second Dixon Decl.") at ¶2.

### b. "Selling Through" to Avoid Great Expenses and/or Losses Does Not Equate with An "Intent to Deceive" the Public

The Plaintiff also argues that "in view of Brooks Brothers' decision to *continue* selling the falsely marked bow ties up to the *present* date—each of which, upon the application of 'objective standards,' more than warrants this Court's drawing *inferences* that Defendants' had *deceptive intent* when they falsely marked the bow ties." *See* Plaintiff's Opp. Brief at 7. Here,

upon learning of the patent text on J.M.C.'s fabric lock component, Defendants immediately telephoned J.M.C. to advise that "it would not accept any further deliveries of components that made reference to patents in any manner." *See* Second Dixon Decl. at ¶2. Plaintiff offers no case law to stand for the premise that selling through its current inventory warrants an inference of a deceptive intent to deceive the public.

On the contrary, the *Nat'l Athletic* Court, *supra*, found no intent to deceive the public where the plaintiff had decided to use mismarked boxes (which cost $6,000 in 1967) instead of destroying them and obtaining new packaging. *See* 1968 U.S. Dist. LEXIS at *7. Similarly, the Court in *Airwick Industries*, *supra*, found no intent to deceive the public where "Airwick sought to heighten its financial position by coordinating the phasing out of the falsely marked old product with the introduction of its new...product." *See* 720 F.Supp. at 413. Here, removal of the stitched-in fabric lock component would destroy the bowties—the monetary quantity of which would far exceed $6,000 using 1968 or 2009 valuations. *See* Second Dixon Decl. at ¶3(e). More importantly, removing all of Defendants' bowties from the market and obtaining substitutes therefor "on the fly" would be an impossibility, making Defendants' decision to phase-out or sell-through its existing inventory the most commercially reasonable option—especially since it was not in any way responsible for affixing the expired patent markings on the fabric lock component.[5] *Id.* at ¶3(a)-(e).

> **II.  There is No Controlling Authority in the Second Circuit or This District to Stand for the Premise that Marking a Device with an Expired Patent is Tantamount to "False Marking"**

---

[5] This is all the more true considering the fact that Defendants: (i) did not affix the patent text to the fabric lock component that J.M.C. provided; (ii) never requested that J.M.C. or anyone else affix the patent text to the fabric lock component; (iii) never instructed J.M.C. to mark the patent text to the fabric lock component; and/or (iv) never marked its bowties with the patent text. *See* Dixon Decl. at ¶¶6, 8, 10.

8

According to an oft-cited treatise, "[t]here is little authority on whether continued use of a patent number on an article after expiration of the patent constitutes culpable mismarking." *See* CHISUM, *supra*, §20.03[7][c][vii] (2008). In another learned patent law treatise that Plaintiff should be familiar with, *Lipscomb's Walker on Patents,* marking of an article with an expired patent is not "culpable mismarking":

> "Intent to deceive the public is a necessary element of the prohibited act now under consideration; and that intent must exist at the time of the marking; and it does not exist when the person marking is himself mistaken relevant to his right as to mark, **or where the word 'patent' or 'patented' is accompanied by other words or characters which indicate that the article was once the subject of a patent, but that the patent has expired at the time of the marking.**"

*See* 2 ERNEST BAINBRIDGE LIPSCOMB III, LIPSCOMB'S WALKER ON PATENTS §8:17 (3d ed. 1985)(emphasis added)(citing *Wilson v. Singer Manuf'g Co.*, 12 F. 57 (CC.N.D. Ill. 1882)). This holding was echoed by the Court in *FMC Corporation v. Control Solutions, Inc.*, 369 F.Supp. 2d 539 (E.D.Pa. 2005)("This Court finds no reason why FMC may not display its [expired] patent number to inform the public of where to acquire the informational and teaching *quid pro quo* that underlies the granting of patent protection."). While Defendants cannot assume the intent of J.M.C. in affixing the expired patent numbers to the fabric lock component that it had been provided, use of the words "The Original Adjustolox Tie" combined with the numbers suggests that it was intended to be viewed as a vintage article with obviously-expired patents. Toward that end, Plaintiff—as an experienced patent attorney—was not confused.[6] On the contrary, Plaintiff had to have known that the numbers affixed to J.M.C.'s fabric lock component were expired.

---

[6] In Plaintiff's Opp. Brief, he speaks of things that "border on the ridiculous." However, what borders on the incredulous are statements in his brief to the effect that "Plaintiff was deceived when he read the false markings," *see* Plaintiff's Opp. Brief at 23, when less than a page later he writes, "[u]pon seeing the exceedingly *low* patent numbers on Brooks Brothers bow ties...Plaintiff found himself questioning his own professional competence, inasmuch as he was *sure* that Brooks Brothers (with almost 200 years of IP product marking behind it) could not possibly have committed such a *brazen* §292-violation[.]" *See id.* at 24.

9

Regardless, Defendants respectfully submits that there is no controlling authority to stand for the premise that reference to an expired patent is a culpable mismarking in the Second Circuit Court of Appeals or this District. The only authority cited for the premise by Plaintiff is a non-binding, recently-decided district court case from the Eastern District of Virginia, *Pequignot v. Solo Cup Co.*, 540 F.Supp.2d 649 (E.D. Va. 2008). "A decision reached by one district court does not control the decision of another district court since they are courts of coordinate jurisdiction." *Fricker v. Menifee*, 2004 U.S. Dist. LEXIS 8624 at *14 (S.D.N.Y. 2004)(Fox, M.J.)(citation omitted). Toward that end, in *Firemen's Insurance Company of Newark, New Jersey v. Keating*, 753 F. Supp. 1146, 1156, fn.10 (S.D.N.Y. 1990)(Leisure, J.) the Court held:

> "**To the extent that this Court differs in its conclusions from the conclusions of other district courts, the Court notes that the decision of one district does not control the decision of another district court.** *See Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977)('The doctrine of *stare decisis* does not compel one district judge to follow the decision of another.'); *Crounse v. Stimpson Computing Scale Co.*, 675 F.Supp. 62, 64 (N.D.N.Y. 1987)(district court has 'independent duty to determine the current relevant' law); *E.E.O.C. v. Pan American World Airways*, 576 F.Supp. 1530, 1535 (S.D.N.Y. 1984)(decision of one district court is not binding precedent upon another district court); *see also United States v. Birney*, 686 F.2d 102, 107 (2nd Cir. 1982)(in context of law of the case, '<u>judges of coordinate jurisdiction are not bound by each others [sic] rulings, but are free to disregard them if they so choose</u>.')."

*Id.* (emphases added). That being said, *Pequignot* is also distinguishable from the instant case. For one, the defendant in *Peiquignot*, the Solo Cup Company, owned the expired patents in question and placed them on the cups and utensils in question. *See, e.g., Pequignot*, 540 F. Supp. 2d at 650. Because the owner the expired patents was also the "affixer" (instead of such placement having been done by a third-party), the Court denied the motion to dismiss, leaving open the question of whether the "false marking" was intended to deceive the public. *Id.* at 655-56.

10

Here, as noted above, Defendants did not affix the expired patent notice to the adjustable neck fabric lock component they were provided (along with other bowtie manufacturers) by J.M.C. The first "red herring" that should have appeared to Plaintiff—a licensed patent attorney—should have come when he began "prospecting" for potential Section 292 defendants. If Plaintiff properly researched the numbers and conducted *due diligence* or contacted Defendants before filing his suit, he would have learned that J.M.C. provided components to RBAI with the patent text already affixed thereto and these ancient and expired patents were never in the name of Defendants.[7] In all cases cited by Plaintiff—including *Pequignot*—the affixer of the allegedly culpable false marking is the party that is looked to in determining whether it had the requisite intent to deceive the public. In all cases, the affixer is also the owner of the allegedly "falsely-marked" patent. This "owner/affixer" connection is not a coincidence. Here, Defendants never owned the expired patents and it was not responsible for affixing reference thereto on the fabric lock component provided to it by J.M.C.

The second "red herring" should have appeared to Plaintiff occurred upon filing of Defendants' Motion to Dismiss with the Declaration of Joseph Dixon describing the origin of the "Original Adjustolox" fabric lock and how it came to Defendants with the patent numbers already affixed thereto. At that point, as a responsible patent attorney with a duty not to waste the resources of this Court, Plaintiff should have dismissed the instant litigation as to Defendants and sought to bring his Section 292 action against J.M.C. However, J.M.C. is a non-party to this litigation and remains as such. Nevertheless, Plaintiff is, at the very least, *on notice* of J.M.C.'s

---

[7] Also, Plaintiff never mentions the third patent number listed on the J.M.C. adjustable fabric lock component (e.g., 279,346). This number actually pertains to a patent for an "electrode for secondary batteries" and dates from June 12, 1883. *See* Declaration of Ryan A. McGonigle ("McGonigle Decl.") in Support of Defendants' Motion to Dismiss at ¶2.

11

existence now. It is the real party from whom Plaintiff should seek his *qui tam* remedy. As against Defendants—for the reasons stated in Defendants' initial brief—Plaintiff lacks standing.

Like Plaintiff, if his "'sharp dressed man'/bowtie consumer" comments are to be believed, Defendants reposed in the confidence that such patent references included on the fabric lock component manufactured and supplied to it by J.M.C. were correct and valid. As such, this Court should dismiss Plaintiff's Complaint with prejudice because it is a legal impossibility on the facts pleaded and currently before the Court.

### III.     Plaintiff Deliberately Misstates the Law to Serve His Ends

Plaintiff contends that:

> "The issues to be prove in the case at bar…are that the Defendants marked the bow ties with U.S. Patent 2,083,106 and U.S. Patent 2,123,620 while the bow ties were *not* covered by at least one claim of each U.S. Patent (*i.e.*, that the bow ties were *unpatented articles*), and that Defendants so marked them *having no reasonable belief that the articles were properly marked* (*i.e.*, *covered* by at least one claim of each U.S. Patent) or marked them with *knowledge of the statement's falsity* (*i.e.*, knew they were not *covered* by at least one claim of each U.S. Patent, *for the purpose of, and with the intent of, deceiving the public*. Clontech Laboratories Inc. v. Invitrogen Corp., 406 F.3d 1347, 1351-53 (Fed. Cir. 2005). Plaintiff must prove the *knowledge* and *deceptive intent* elements by a *preponderance*, and the latter element may be proven by *inferences* drawn by the application of 'objective standards.'"

*See* Plaintiff's Opp. Brief at 6. The above-cited paragraph from Plaintiff's Opposition Brief may seem somewhat *innocuous*, however, it presupposes that Defendants were "markers" or "affixers" and that they knew of the patents' expired status and continued to use these "false" patent markings with an intent to deceive the public. The "physical facts" are, however, that Defendants were mere innocent purchasers of a product that came to them with the patent markings already included thereon, who also had never asked J.M.C. to include such markings on the adjustable fabric lock components.

Essentially, what Plaintiff would like this Court to do is skip a step in the relevant analysis. In order to have **knowledge** of a false marking, one must first be an affixer. From that point **only** may it be inferred that the affixer intended to deceive the public. Assuming, *arguendo*, that affixing notice of an expired patent onto a product[8] can be actionable under Section 292, Defendants here still do not meet the first prong. They, quite simply, never affixed. Moreover, Defendants never had notice of the patent text until Plaintiff filed this action so it cannot be said they had knowledge.

Plaintiff's argument also seems to foist a form of vicarious/"knew or should have known" liability onto the jurisprudence under Section 292. No such case law exists in any jurisdiction. In fact, no case law could be found to stand for the premise that a licensee can be found liable under Section 292 for the falsely-marked products of a licensor when either resold or incorporated into a product made by a licensee. In such circumstances, a *qui tam* plaintiff would normally sue the licensor as the affixer who ought to have constructive knowledge. Here, however, it is *patently obvious* that Plaintiff seeks a deeper pocket than that of J.M.C. Perhaps he represents a competitor of Defendants at his law firm.[9] Who knows Plaintiff's true motivation? Whatever such motivation may be, the admonition of the court regarding *Qui Tam* plaintiffs like Mr. Stauffer in *Taft v. Stephens Lith. & Eng. Co. C.C.*, 38 F.28, 29 (C.C. E.D.Mo. 1889), should be remembered:

---

[8] Levi Strauss & Company ("LS&C") also affixes (using Plaintiff's definition) an "expired" patent notice to its blue jean products. LS&C uses the terms "Patented in U.S. May 20, 1873" on its jeans and also has a trademark registration including the same language. *See* McGonigle Decl. at ¶3. In LS&C's case—as assumedly was the intent of J.M.C. here—the idea was to harken back to yesteryear to original styles and quality.

[9] The Court in *Zuckerman v. Pilot*, 71 F. Supp. 478 (S.D.N.Y. 1940) cautioned against lawyers bringing *qui tam* actions under the predecessor statute to 35 U.S.C. §292 as a "dummy" for a defendant's competitors. *Id.* at 479. Moreover, the Court stated: "Although the statute does not include a ban against a lawyer becoming an informer and bringing a suit such as this, I do not believe that Congress ever expected that the legal profession would indulge in these practices." *Id.* at 480.

13

> "Plaintiff is not suing for the value of his services, or for injury to his property, but simply to make profit to himself out of the wrongs of others; and when a man comes in as an informer, and **in that attitude alone asks to have a half million dollars put into his pocket, <u>the courts will never strain a point to make his labors light, or his recovery easy</u>.**"

*Id.* at 29 (emphases added).

### IV. <u>Section 292 is Unconstitutionally Vague</u>

Assuming, *arguendo,* that the Court accepts Plaintiff's argument that Defendants can be liable for falsely marking their bowties: (i) with an expired patent text; and/or (ii) when the allegedly false patent text was included on a separate component prepared by an unrelated third-party from whom Defendants purchased the same, notice to Defendants upon a literal reading of the Section 292 would be lacking. Nowhere in Section 292 does it state that an "expired" patent is or can be considered as being "unpatented" for purposes of finding liability under this quasi-penal statute. Nowhere in Section 292 does it state (or is it implied) that a purchaser or licensee of a component part on which the allegedly-false patent text appears can be liable for the deeds of the actual affixer. Moreover, there is no "vicarious liability" or "knew of should have known" requirement in the statute and to accept Plaintiff's argument would render Section 292 unconstitutionally vague because Defendants would have never anticipated being hailed into court to answer for the deeds of others.

Additionally, as noted in Defendants' initial brief, the statute does not limit the amount of times that Defendants may be sued for "false marking" remedies under Section 292. Other predatorial prospectors like Plaintiff may be waiting in the wings ready to sue not only Defendants (in other jurisdictions) but Lord & Taylor, Bloomingdale's and Saks Fifth Avenue depending upon the outcome in the instant case. As regards at least Defendants, the statute

contains no "first-to-file" provision and—as such—could subject Defendants to potential double jeopardy problems.

V. **Plaintiff's Conduct in Bringing this Frivolous Section 292 Claim Justifies the Imposition of Rule 11 Sanctions**

Although Plaintiff is proceeding in this matter *pro se*, as an experienced patent attorney admitted to this Court, he stands on a different footing from other *pro se* plaintiffs. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972)(holding that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers[.]"). Rule 11 provides that an unrepresented party must sign any paper filed with the court to certify that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...[that]:

> "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> "(2) **the claims, defenses, and other legal contentions are warranted by existing law** or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> "(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> "(4) the denials of factual contentions are warranted on the face of the evidence or, if specifically so identified, are reasonably based on a belief or a lack of information."

*See* Fed. R. Civ. P. 11 (emphases added).

If a pleading is signed in violation of Rule 11, the court can impose sanctions on the signer. *Id.* The standard for determining whether Rule 11 has been violated is objective reasonableness. *See, e.g, Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498

U.S. 533, 550-51 (1991). Even as against regular *pro se* plaintiffs (who are not also members of the bar and/or patent attorneys), courts have permitted Rule 11 sanctions where a lawsuit was filed in bad faith or for vexatious purposes. *See, e.g., Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1037 & n.13 (9th Cir. 1985), *cert. denied*, 476 U.S. 1183 (1986). In the context of a former attorney proceeding *pro se*, a court in this District has held that "as a former attorney with experience, [plaintiff] is fully capable of conforming with the demands of Rule 11." *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388 at *42 (S.D.N.Y. 2008)(Buchwald, J.); *see also, Malley v. New York City Bd. of Educ.*, 207 F.Supp. 2d 256, 259 (S.D.N.Y. 2002)(Marrero, J.); *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1986)("one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.").

Here, as an experienced patent attorney, Plaintiff should have known that his claim that an expired patent can form the basis for a "false marking" claim under Section 292 was unwarranted by existing law. If that was not bad enough, Plaintiff—as a responsible patent attorney—should have voluntarily dismissed this action after learning (as he now knows) that Defendants were distanced from the actual "affixing/marking" of the allegedly-false marking on the J.M.C. adjustable fabric lock component. He should have known at that point—at the very least—that evidentiary support for his claims was **patently lacking.** Accordingly, an appropriate sanction under Rule 11 is warranted.[10]

---

[10] Defendants submit further that the appropriate sanction need not necessarily be monetary. *See Abdelhamid v. Altria Group, Inc.*, 515 F.Supp.2d 384, 400 (S.D.N.Y. 2007)(dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively pursuant to Fed. R. Civ. P. 11(c)).

## VI. **Conclusion**

For all of the above-stated reasons and for those stated in Defendants' initial brief, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety and the Court award whatever additional relief it, in its discretion, deems proper and necessary.

Respectfully submitted,

Dated: April 10, 2009

/Stephen L. Baker/
Stephen L. Baker [SB1859]
Neil B. Friedman [NF0591]
Ryan A. McGonigle [RM8234]
Attorneys for Brooks Brothers, Inc. and
Retail Brand Alliance, Inc.
BAKER & RANNELLS, PA
575 Route 28, Suite 102
Raritan, New Jersey 08869
Telephone: 908-722-5640
Fax: 908-725-7088

## CERTIFICATE OF SERVICE

I hereby certify on the 10th day of April, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6), and served Plaintiff with the same via First Class Mail at the following address:

RAYMOND E. STAUFFER
9 SENTINEL COURT, UNIT F
CHATHAM, NEW JERSEY 07928

*Pro Se Plaintiff*

Stephen L. Baker [SB1859]
Neil B. Friedman [NF0591]
Ryan A. McGonigle [RM8234]
Attorneys for Brooks Brothers, Inc. and
Retail Brand Alliance, Inc.
BAKER & RANNELLS, PA
575 Route 28, Suite 102
Raritan, New Jersey 08869
Telephone: 908-722-5640
Fax:  908-725-7088