UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                  :

RAYMOND E. STAUFFER,            :

                          Plaintiff,          :      08-cv-10369 (SHS)

        -against-                  :      OPINION & ORDER

BROOKS BROTHERS, INC. and    :
RETAIL BRAND ALLIANCE, INC.   :

                          Defendants.       :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Pro se plaintiff Raymond E. Stauffer brings this qui tam action against Brooks Brothers, Inc. and its parent company, Retail Brand Alliance, Inc. (collectively, "Brooks Brothers") alleging false patent marking in violation of section 292 of the Patent Act. 35 U.S.C. § 292. That section prohibits a person from marking an "unpatented article" with words "importing that the same is patented, for the purpose of deceiving the public." Id. It further provides that "any person" may sue for damages, and if damages are imposed under the statute, "the person suing" is to receive one-half and the United States is to receive the other half. Id. Stauffer contends Brooks Brothers has falsely marked the bow ties it manufactures and sells with the phrase "The Original Adjustolox Tie Reg'd & Pat'd U.S Pat. Off. 279346 – 2083106 – 2123620" when, in fact, each of those patents expired more than a half a century ago. Stauffer thus argues Brooks Brothers should be held liable pursuant to section 292 and that he is entitled to one half of any penalty imposed.

Brooks Brothers now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1). In particular, Brooks Brothers contends that Stauffer lacks standing to pursue this action because he has not alleged any injury in fact, and that dismissal pursuant to Rule 12(b)(1) is therefore appropriate.[1] Stauffer counters that section 292 creates a <u>qui tam</u> cause of action because it allows "any person" to bring suit to recover penalties, and therefore, Stauffer has standing as a relator in the place of the government to pursue the action on behalf of an injured public.

Because the Court finds that Stauffer, proceeding as a <u>qui tam</u> plaintiff, fails to allege a cognizable injury in fact to the United States or such an injury to the public that has been assigned to him by the government, it concludes that he lacks standing to pursue the penalties imposed by section 292. Accordingly, defendants' motion to dismiss the complaint is granted.

**I.     BACKGROUND**

The following facts are taken from the complaint unless otherwise noted and are presumed to be true.

   A.    <u>Parties</u>

Since 1818, Brooks Brothers has been a manufacturer and retailer of men's and women's clothing, and, of particular importance to the present litigation, men's bow ties. (<u>Id</u>. ¶¶ 5, 17-18.)   Brooks Brothers is wholly owned by defendant Retail Brand Alliance. (<u>Id.</u> ¶¶ 6-7.)

---

[1] Defendants also seek dismissal pursuant to Fed. R. Civ. P 12(b)(6) on the grounds that the complaint fails to state a plausible claim to relief because it fails to allege an "intent to deceive" the public—a critical element of a section 292 claim—with sufficient specificity to meet the heightened pleading requirements for claims of fraud imposed by Fed. R. Civ. P. 9(b). Because the Court finds plaintiff lacks standing and that dismissal is thus appropriate pursuant to Rule 12(b)(1), it does not reach the merits of defendants' Rule 12(b)(6) motion.

Stauffer is a practicing patent attorney[2] and, on several occasions, he purchased Brooks Brothers bow ties of the variety at the crux of this action at Brooks Brothers stores. (Id. ¶¶ 4, 23; Ex. C to Pl.'s Compl.)

### B. Defendants' Bow Ties and the Adjustolox Patents

Brooks Brothers currently manufactures and sells more than 120 different bow ties. (Id. ¶ 24.) While the various bow ties differ in design, fabric, and style, all of them are "adjustable"—that is, wearers can alter the length of the tie by using a sliding metal device to ensure that it fits comfortably around the wearer's neck. That sliding metal device—"the Adjustolox"—was at one time covered by at least two patents: patent 2,083,106, which was issued in 1937, covered an "Adjustable Necktie" and expired in 1954. Patent 2,123,620, which was issued in 1938, covered a "Facing Band and Multiple Band Strip" and expired in 1955.[3] (Id. ¶¶ 19-20.)

Despite the fact that both patents have long since expired, according to the complaint, Brooks Brothers' bow ties continue to be embroidered with a label stating: "The Original Adjustolox Tie Reg'd & Pat'd U.S Pat. Off. 279346 – 2083106 – 2123620." (Id. ¶¶ 18, 24.) Stauffer alleges defendants knew or should have known that the patents had expired and that their bow ties therefore were no longer patented articles. (Id. ¶¶ 114-15.) Plaintiff further contends that Brooks Brothers has manufactured tens of thousands of these falsely marked ties and continues to design and produce new

---

[2] The Court takes judicial notice of the fact, conceded by plaintiff, that Stauffer is a practicing patent attorney admitted to the bar of this Court. (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss 23-24.); Fed. R. Evid. 201 (Judicial notice appropriate if facts are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonable questioned").
[3] The actual mark in dispute lists not two, but three patents: 2,083,106; 2,123,620; and 279,346. However, the complaint makes no mention of and pleads no facts respecting the third patent, so the Court will not consider it further.

bow ties, all of which are similarly improperly embroidered with the false mark.  (Id. ¶¶ 46-47, 51.)

        C.      <u>The False Marking Statute</u>

Section 292 of the Patent Act proves that any person who "marks upon [or] affixes to . . . any article, the word 'patent' or any word importing that the same is patented, for the purposes of deceiving the public . . . shall be fined not more than $500 for every such offense."  35 U.S.C. § 292(a).  Section 292(b) then provides that "any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  35 U.S.C. § 292(b).

        D.      <u>The Complaint</u>

The complaint states that it is "a <u>qui tam</u> action for false patent marking under 35 U.S.C. § 292." (Compl. ¶ 1.)  It alleges that defendants' bow ties are no longer patented—and are therefore "unpatented" for purposes of the statute—but have nevertheless been marked by defendants with the label: "The Original Adjustolox Tie Reg'd & Pat'd U.S Pat. Off. 279346 – 2083106 – 2123620."  (Id. ¶¶ 112, 118-19.)  The complaint alleges that the label thus constitutes a false mark.  It goes on to allege that defendants "know, or at least should have known" that the patents had expired, and accordingly, knowingly misrepresented to the public that each of its so-marked bow tie products was covered by a valid U.S. patent.  (Id. ¶¶ 114-17.)  Finally, Stauffer alleges defendants have falsely marked their bow ties "for the purpose of, and with the intent of, deceiving the public" and are therefore subject to penalties set forth in section 292.  (Id. ¶¶ 124-25.)

By so doing, Stauffer contends Brooks Brothers has "wrongfully quelled competition with respect to such bow tie products." (Id. ¶ 129.) In particular, Stauffer alleges Brooks Brothers has "wrongfully and illegally advertis[ed] patent monopolies that [defendants] do not possess," thereby causing harm to the economy of the United States" because the embroidered mark, "has the potential to, discourage or deter" potential competitors "from commercializing a competing bow tie." (Id. ¶ 128, 130.) The complaint makes those allegations largely on "information and belief" and provides no further factual allegations in support of that alleged harm. It also contends, in similarly unsupported fashion, that, as a result, defendants "have likely benefitted in at least maintaining their considerable market share with respect to the herein-described bow tie products in the high-end haberdashery marketplace." (Id. ¶¶ 129-30.) Accordingly, Stauffer asks the Court to impose a $500 penalty for each bow tie manufactured and marked by defendants. (Id. ¶ 131.)

**II.    ANALYSIS**

    A.    The Motion to Dismiss Standard

On a motion to dismiss a complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." Sharkey v. Quarantillo, 541 F.3d 75, 82-83 (2d Cir. 2008) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). While the Court must accept as true all material facts alleged in the complaint, in resolving challenges to subject-matter jurisdiction the Court may look beyond the pleadings in order to satisfy itself that it has the authority to hear the action. See Filetech

S.A. v. Fr. Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) (citing Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991)).

B.   Plaintiff's Standing

Section 292 authorizes "any person" to bring suit for false marking and further provides that any penalties imposed shall be split equally between "the person suing" and the United States. 35 U.S.C. § 292(b). Despite that provision, defendants contend that Stauffer lacks standing to bring this suit because section 292 is not a qui tam provision but instead authorizes only competitors actually aggrieved by false marking to bring suit. Alternatively, defendants argue that even if Stauffer qualifies as "any person" for purposes of the statute, he nonetheless lacks the requisite constitutional standing to bring suit because he fails to allege an injury in fact.

As a preliminary matter, the Court notes that section 292 is indeed a qui tam provision—i.e., a statute that authorizes someone to pursue an action on behalf of the government as well as himself[4]—and has been repeatedly referred to and treated as such by both the Supreme Court and the Second Circuit. See Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 768 n.1 (2000) (listing section 292(b) as a qui tam provision); Boyd v. Schildkraut Giftware Corp., 936 F.2d 76, 79 (2d Cir. 1991) ("[Section 292] is enforceable by a qui tam remedy, enabling any person to sue for the statutory penalty and retain one-half of the recovery."). Accordingly, while defendants' are indisputably correct that the vast majority of section 292 claims are brought by competitors rather than consumers, there is nothing in the text of the statute that compels

---

[4] As the Supreme Court noted: "Qui tam is short for the Latin phrase qui tam pro domino rege quam pro se ipso in hac parte sequitur, which means 'who pursues this action on our Lord the King's behalf as well as his own.' The phrase dates from at least the time of Blackstone." Vermont Agency of Nat'l Resources v. United States ex rel. Stevens, 529 U.S. 756, n.1 (2000) (citing 3 W. Blackstone, Commentaries *160).

6

such a result.  Pequingnot v. Solo Cup Co., No. 07-cv-897, 2009 U.S. Dist. LEXIS 26020, at *7-8 (E.D. Va. Mar. 27, 2009) (finding the "plain language of the statute" precludes limiting "any person" to "competitors"); Pentlarge v. Kirby, 19 F. 501, 503 (S.D.N.Y. 1884) (Section 292(b) grants a cause of action to "whomsoever it may please to sue").

However, all plaintiffs—including qui tam plaintiffs granted a statutory right of action—must satisfy the "irreducible constitutional minimum" of standing.  See Vermont Agency, 529 U.S. at 771 (quoting Lujan, 504 U.S. at 560).  That requirement, which stems from the "case or controversy" requirement of Article III, see Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1106 (2d Cir. 1992), imposes on any party invoking federal jurisdiction a burden to establish: (1) that it has suffered an injury in fact, (2) that is causally connected to the defendant, and (3) that is likely to be redressed by the court. Lujan, 504 U.S. at 560-1; Port Wash. Teachers' Ass'n v. Bd. of Ed., 478 F.3d 494, 498 (2d Cir. 2008).

The first requirement—an injury in fact—is the "hard floor of Article III jurisdiction that cannot be removed by statute."  Summers v. Earth Island Inst., -- U.S. --, 129 S.Ct. 1142, 1152 (2009).  Unlike a traditional plaintiff, a qui tam plaintiff commonly suffers no injury himself.  However, as the Supreme Court instructs, a qui tam provision operates as a statutory "assignment" of the rights of another—generally the United States—and accordingly, a qui tam plaintiff may proceed in vindication of those rights provided the assignor—i.e., the government—has itself suffered an injury in fact causally connected to the defendant that is likely to be redressed by the court.  Vermont Agency, 529 U.S. at 774 ("[T]he United States' injury in fact suffices to confer standing on [the

7

relator]"); see also Conn. v. Physicians Health Care Servs. of Conn., Inc., 287 F.3d 110, 117 n.8 (2d Cir. 2005) (Vermont Agency grants an assignee plaintiff standing only insofar as the "claim" deemed to be assigned meets constitutional standing requirements). Section 292 thus assigns to Stauffer—or to "any person"—the authority to bring suit to vindicate cognizable injuries incurred on the public or the United States through violation of its provisions.

In most qui tam actions, the alleged injury in fact to the United States as assignor is obvious and proprietary. In a claim brought pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq., for instance, the injury in fact is simply the "proprietary injury resulting from the alleged fraud." Vermont Agency, 529 U.S. at 771. In the context of a section 292 claim, however, the injury to the United States as assignor is far less evident. By its terms, the statute seeks to protect the public not simply from false marking of unpatented articles but instead from false marking that is fraudulent, deceptive, and intentional. See Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) (section 292 is not a strict liability offense but requires an intent to deceive public); Blank v. Pollack, 916 F. Supp. 165, 173 (N.D.N.Y. 1996) (no liability for "erroneous patent marking [that] was the result of mistake or inadvertence") (citations omitted). Accordingly, the actionable injury in fact that the government is able to assign would have to be an injury to it or to the public stemming from fraudulent or deceptive false marking.[5]

---

[5] The Court is aware of the recent observation by one district court that an assignable interest—and thus, standing—can be found for purposes of a section 292 claim based solely on the United States government's "sovereign interest" in seeing its laws followed and the accompanying injury in fact "arising from violation of the law." Pequignot v. Solo Cup Co., No. 07-cv-897, 2009 U.S. Dist. LEXIS 26020, at *27-28 (E.D. Va. Mar. 27, 2009). Even assuming that a violation of the United States' "sovereign interest" in seeing the law followed could be an assignable interest potentially vindicated by a qui tam action, in order for section 292 to be violated, a defendant must not only have falsely marked an unpatented article but must have done so

8

Stauffer's complaint purports to allege such an injury to the public and to the United States inasmuch as defendants' conduct has "wrongfully quelled competition with respect to such bow tie products thereby causing harm to the economy of the United States." (Compl. ¶ 129.) It further asserts that by "wrongfully and illegally advertis[ing] patent monopolies that they do not possess" defendants have "benefitted in at least maintaining their considerable market share . . . in the high-end haberdashery marketplace." (Id. ¶ 130.) Accordingly, plaintiff contends he has standing to proceed as a qui tam assignee of the public's valid section 292 claims.

Brooks Brothers responds that the alleged injury—which is supported by no additional factual pleadings—is insufficient to establish an injury in fact to the public and therefore, Stauffer does not have standing to bring suit on behalf of the United States. The Court agrees. An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations omitted). Stauffer's two conclusory statements set forth above but buried in a forty-page complaint are insufficient to establish anything more than the sort of "conjectural or hypothetical" harm that the Supreme Court instructs is insufficient. In particular, the complaint fails to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy. That some competitor might somehow be injured at some point, or that some component

---

"for the purpose of deceiving the public." 35 U.S.C. § 292. Accordingly, as noted above, absent an alleged injury in the form of deception to the public, a plaintiff has not alleged a violation of the law, and therefore there exists no corresponding harm to the United States' "sovereign interest." Thus, allegations such as plaintiff's that a defendant improperly marked an unpatented article as patented, standing alone, neither alleges a violation of section 292 nor pleads an injury in fact to the sovereign interest of the United States assignable to a qui tam plaintiff. Moreover, the Court doubts that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a qui tam plaintiff's standing. See FEC v. Akins, 524 U.S. 11, 24 (1998) (An "abstract" harm such as "injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity" necessary for standing) (collecting cases).

of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing.  Cf. Summers, -- U.S. at --, 129 S.Ct. at 1151-52 (finding "some day" harms "without any description of concrete plans, or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require" (citations omitted)); Lujan, 504 U.S. at 566 ("Standing is not 'an ingenious academic exercise in the conceivable' . . . [but] requires . . . perceptible harm." (citations omitted)).

Moreover, the possibility that "some day" might come—i.e, that hypothetical competitors might be harmed at some point in the future—is substantially diminished by information contained in declarations and exhibits submitted by defendants, and properly considered on a Rule 12(b)(1) motion, Filetech S.A., 157 F.3d at 932, which show that the adjustolox mechanism, with the mark in question affixed to it, is not made by defendants but is instead provided to defendants and to many of Brooks Brothers' competitors by a third party, "J.M.C. Bow Company, Inc." (Decl. of Joseph Dixon dated Jan. 14, 2009 ¶ 4.)   In other words, the relevant mark used by Brooks Brothers, far from quelling competitors, is used by them as well, and defendants can point to bow-tie products made and sold by competitors such as Saks Fifth Avenue, Bloomingdale's, and Lord & Taylor, all of which utilize the adjustolox mechanism and are marked with the exact same language.  (Exs. A-C to Decl. of Neil B. Friedman dated Jan. 15, 2009.)

Stauffer disputes none of the above in his opposition papers,[6] and in light of those representations and the thinness of plaintiff's pleadings with respect to the injury-in-fact

---

[6] Instead, Stauffer points to bow ties sold by different competitors, including Ralph Lauren, Charvet, and Paul Stuart, that do not contain the adjustulox mechanism or the mark in question here and concludes, without any basis in this record or additional factual allegations, that those competitors incurred "additional costs in designing around" the two adjustolox patents.  (Decl. of Raymond E. Stauffer dated

10

requirement, the Court finds Stauffer has failed to allege that defendants' conduct has caused an actual or imminent injury in fact to competition, to the United States economy, or the public that could be assigned to him as a qui tam plaintiff or be vindicated through this litigation. Stauffer therefore lacks standing to proceed.[7]

      C.     Attorneys' Fees

Brooks Brothers also seeks its attorneys' fees incurred in defending the instant action. A court may award "reasonable attorneys' fees" in "exceptional cases" to a "prevailing party." 35 U.S.C. § 285. Whether a case is "exceptional" for purposes of section 285 is a factual determination, and depends on such factors as whether the litigation was undertaken in bad faith and whether the opposing party engaged in inequitable conduct. Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed Cir. 1996). The decision to grant fees is committed to the discretion of the trial judge, and "not every exceptional case warrants the award of attorney fees." L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1128 (2d Cir. 1993) (citations omitted).

After evaluating the "totality of the circumstances" surrounding this litigation Yamanouchi Pharm. Co. Ltd. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1347 (Fed. Cir.

---

Mar. 16, 2009 ¶¶ 15-17.) Such factual allegations are not contained in this complaint, are utterly conclusory and, most important, urge a conclusion that is neither logically compelled nor remotely supported by anything in the complaint or any of plaintiff's exhibits or declarations.

[7] In his opposition to the motion to dismiss, Stauffer, for the first time, asserts that he personally suffered injury as a result of defendants' conduct and therefore has standing to proceed in three ways: first, Brooks Brothers' alleged false marking has caused competitors to "design around" the adjustolox having been deceived into thinking the mechanism remains currently patented, and those design around costs have been passed on to consumers, such as plaintiff, who as a "sharp-dressed man . . . prefers the bow tie to the more commonly worn four in hand." (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss at 20-21 (emphasis in original)). Second, because defendants' false marks "create an injury to anyone who reads them," Stauffer has been injured by having found himself within eyesight of defendants' bow ties. (Id. at 23.) Third, as a patent attorney, "plaintiff found himself questioning his own professional competence, inasmuch as he was sure that Brooks Brothers . . . could not have committed such a brazen section 292 violation." (Id. at 24.)

    None of the above is contained in the complaint and accordingly is not a properly alleged injury in fact in this action. Moreover, none would be sufficient to support this qui tam action because, at the very most, the above might establish an injury to plaintiff and thus plaintiff's standing to proceed on his own behalf, not as an assignee of injuries to the public.

11

2000), the Court finds that an award of fees would be inappropriate. While defendants contend, correctly, that Stauffer's complaint should be dismissed for lack of standing, they do not assert any basis for finding the suit was commenced or prosecuted in bad faith. Nor do defendants point to any inequitable conduct or other circumstances that would warrant a finding that this was the type of "exceptional" case in which fees are appropriate.

Accordingly, defendants' request for attorneys' fees pursuant to 35 U.S.C. § 285 is denied.

### III. CONCLUSION

Because the Court finds that the complaint fails to allege an injury in fact to the public or to the United States, Stauffer lacks constitutional standing to proceed on its behalf. Accordingly, Brooks' Brothers' motion to dismiss the complaint is granted.

Dated: New York, New York
May 14, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.